No. 23-4104

---

**In the United States Court of Appeals
for the Tenth Circuit**

---

Free Speech Coalition, Inc., et al.,

*Plaintiffs-Appellants*,

v.

Jess L. Anderson, in his official capacity as the Commissioner of the Utah
Department of Public Safety, and Sean D. Reyes, in his official capacity as
the Attorney General of the State of Utah.

*Defendants-Appellees*,

---

On appeal from the United States District Court for the District of Utah,
No. 2:23-cv-00287
Honorable Ted Stewart

---

**Brief of Appellees**

---

Sarah Goldberg
Assistant Solicitor General
David N. Wolf
Lance Sorenson
Assistant Attorneys General
160 East 300 South, Fifth Floor
P.O. Box 140858
Salt Lake City, Utah 84114
(801) 366-0533
sgoldberg@agutah.gov

*Counsel for Appellees*

**Oral Argument is Not Requested**

# Table of Contents

Introduction.................................................................................... 1

Statement of the Issues .................................................................. 3

Statement of the Case .................................................................... 4

I.      The Act ................................................................................... 4

II.     Procedural History ................................................................ 6

Summary of the Argument ............................................................. 7

Argument........................................................................................ 10

I.      The Commissioner and Attorney General are immune from
        suit and do not qualify for the *Ex parte Young* exception to
        their Eleventh Amendment immunity. .................................... 11

        A.      Commissioner Anderson has no connection to the
                enforcement of the Act. ................................................ 13

        B.      The Attorney General has no connection to the
                enforcement of the Act. ................................................ 20

                1.      FSC cannot escape the well-established rule that
                        a state official's general duty to enforce state law
                        will not satisfy the *Ex parte Young* exception. ................... 22

                2.      The Attorney General's specific statutory duties
                        do not provide any connection to the enforcement
                        of the Act. ............................................................. 29

II.     FSC cannot satisfy Article III's case or controversy
        requirement........................................................................... 32

        A.      FSC cannot demonstrate that its injuries are caused
                by the Commissioner or the Attorney General or that a
                favorable decision against those officials will redress
                its injuries. ................................................................. 33

        B.      FSC's case or controversy arguments are meritless. ................. 39

Conclusion ..................................................................................... 48

# Table of Authorities

## Cases

*Am. Civil Liberties Union v. Johnson,*
  194 F.3d 1149 (10th Cir. 1999) .................................................................. 41

*Balogh v. Lombardi,*
  816 F.3d 536 (8th Cir. 2016) ............................................................... 18, 19

*Bd. of Cnty. Comm'rs v. Geringer,*
  297 F.3d 1108 (10th Cir. 2002) ...................................................................... 32

*Bishop v. Oklahoma,*
  333 F. App'x 361 (10th Cir. 2009) ................................................................ 20

*Bronson v. Swenson,*
  500 F.3d 1099 (10th Cir. 2007) .............................................................. 33, 34

*Chamber of Com. of U.S. v. Edmondson,*
  594 F.3d 742 (10th Cir. 2010) .................................. 10, 23, 27, 28, 29, 33, 42

*Citizens Union City of New York v. Att'y Gen. of N.Y.,*
  No. 16-cv-9592, 2017 WL 2984167 (S.D.N.Y. June 23, 2017) ...................... 22

*Coll v. First Am. Title Ins. Co.,*
  642 F.3d 876 (10th Cir. 2011) ...................................................................... 35

*Collins v. Daniels,*
  916 F.3d 1302 (10th Cir. 2019) .................................................................... 33

*Consumer Data Indus. Ass'n v. King,*
  678 F.3d 898 (10th Cir. 2012) ........................................................... 21, 44, 45

*Cressman v. Thompson,*
  719 F.3d 1139 (10th Cir. 2013) .................................................................... 33

*Department of Commerce v. New York,*
  139 S.Ct. 2551 (2019) .................................................................................. 47

*Digital Recognition Network, Inc. v. Hutchinson,*
  803 F.3d 952 (8th Cir. 2015) ...................................................... 21, 22, 23, 30

*Douglas S. v. Altius Health Plans, Inc.*,
    409 F. Appx. 219 (10th Cir. 2010) ................................................................ 5

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*,
    438 U.S. 59 (1978) ........................................................................ 47

*Elephant Butte Irr. Dist of N.M. v. Dep't. of Interior*,
    160 F.3d 602 (10th Cir. 1998) ........................................................ 20

*Ex parte Young*,
    209 U.S. 123 (1908) ...................................................................... 12

*Fitts v. McGhee*,
    172 U.S. 516 (1899) ...................................................................... 26

*Hendrickson v. AFSCME Council 18*,
    992 F.3d 950 (10th Cir. 2021) ...................... 11, 12, 20, 22, 23, 24, 25, 26, 30

*Hope Clinic v. Ryan*,
    195 F.3d 857 (7th Cir. 1999) ...................................................... 21, 23

*In re C.W. Mining Co.*,
    740 F.3d 548 (10th Cir. 2014) ........................................................ 28

*Lewis v. Governor of Ala.*,
    944 F.3d 1287 (11th Cir. 2019) .................................................. 22, 30

*Long v. Van de Kamp*,
    961 F.2d 151 (9th Cir. 1992) .......................................................... 22

*Kitchen v. Herbert*,
    755 F.3d 1193 (10th Cir. 2014) .................................................. 30, 31

*Nova Health Sys. v. Gandy*,
    416 F.3d 1149 (10th Cir. 2005) .......... 32, 33, 34, 35, 36, 37, 38, 43, 44, 46, 47

*Peterson v. Martinez*,
    707 F.3d 1197 (10th Cir. 2013) ............................................ 12, 16, 18, 19

*Petrella v. Brownback*,
    697 F.3d 1285 (10th Cir. 2012) ............................................ 22, 23, 24, 25, 43

*Prairie Band Potawatomi Nation v. Wagnon*,
    476 F.3d 818 (10th Cir. 2007) .................................................. 16, 17

*Qwest Commc'ns Int'l, Inc. v. F.C.C.*,
 240 F.3d 886 (10th Cir. 2001) ....................................................... 40

*Roe No. 2 v. Ogden*,
 253 F.3d 1225 (10th Cir. 2001) ..................................................... 41

*S. Utah Wilderness All. v. OSMRE*,
 620 F.3d 1227 (10th Cir. 2010) ..................................................... 47

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
 549 U.S. 422 (2007) ..................................................................... 10

*Summit Med. Assocs., P.C. v. Pryor*,
 180 F.3d 1326 (11th Cir. 1999) .............................................. 21, 23

*Tarrant Reg'l Water Dist. v. Sevenoaks*,
 545 F.3d 906 (10th Cir. 2008) ...................................................... 41

*United States v. Huizar*,
 688 F.3d 1193 (10th Cir. 2012) ..................................................... 43

*United States v. L.A. Tucker Truck Lines, Inc.*,
 344 U.S. 33 (1952) ................................................................. 42, 48

*US Magnesium, LLC v. EPA*,
 690 F.3d 1157 (10th Cir. 2012) ..................................................... 47

*Utah v. Evans*,
 536 U.S. 452 (2002) ..................................................................... 47

*Valley Forge Christian Coll. v. Americans United for Separation
 of Church and State, Inc.*,
 454 U.S. 464 (1982) ..................................................................... 48

*Virginia Off. for Prot. and Advoc. v. Stewart*,
 563 U.S. 247 (2011) ..................................................................... 11

*Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*,
 577 F.3d 1255 (10th Cir. 2009) ..................................................... 11

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
 252 F.3d 316 (6th Cir. 2001) ................................................... 22, 30

iv

*Whole Woman's Health v. Jackson,*
  595 U.S. 30 (2021) .......................... 3, 21, 23, 24, 25, 27, 34, 35, 37, 44, 47, 48

*WildEarth Guardians v. Bidgain,*
  555 F. App'x 815 (10th Cir. 2014)................................................................. 10

*WildEarth Guardians v. BLM,*
  870 F.3d 1222 (10th Cir. 2017) ............................................................. 46, 47

**Statutes**

Kan. Stat. § 72-6405 ........................................................................................ 23

N.M. Stat § 10-7E-9 ........................................................................................ 25

Utah Code §§ 53-1-104........................................................................................ 14

Utah Code § 53-3-102 ........................................................................................ 15

Utah Code § 53-3-235 .................................................................................. 6, 14, 15

Utah Code § 67-5-1 .................................................................................... 29, 30

Utah Code § 78B-3-1001................................................................................ 4, 5, 13, 14

Utah Code § 78B-3-1002............................................................................. 1, 4, 13, 21, 38

**Other Authorities**

13 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.*
  § 3524.3 (3d ed., April 2023 Update)............................................................. 20

v

## Statement of Related Cases

There are no prior or related appeals.

## Introduction

In early 2023, the Utah Legislature passed S.B. 287, Online Pornography Viewing Age Requirements (the Act), to protect minors from viewing harmful material on the internet. The Act requires commercial entities that publish "material harmful to minors . . . to perform reasonable age verification methods" to ensure those viewing the content are over 18. Utah Code §§ 78B-3-1002(1). Violation of the Act is not a crime. Nor does it lead to state-imposed civil penalties or sanctions. Rather, the Act creates a private cause of action whereby a commercial entity that violates the Act is "liable to an individual for damages resulting from a minor's accessing the material, including court costs and reasonable attorney fees." *Id.* § 78B-3-1002(3).

Appellants Free Speech Coalition, Inc. and other individuals and entities allegedly impacted by the Act (collectively, FSC) challenged the Act by suing the Utah Attorney General and the Commissioner of the Utah Department of Public Safety, both in their official capacities. FSC sought both an injunction and a declaration that the Act violated its constitutional rights. The district court dismissed FSC's complaint, holding that because neither the Attorney General nor the Commissioner had any role in enforcing the Act, FSC could not satisfy the *Ex parte Young* exception to Eleventh

1

Amendment immunity and that it lacked standing because relief from the court against those defendants would not redress FSC's injuries.

The jurisdictional *Ex parte Young* and standing analyses are intertwined. To satisfy either one, FSC must show that the Commissioner and Attorney General have a connection to the enforcement of the Act, something it cannot do. Because the Act creates only a private cause of action, neither the Commissioner nor the Attorney General can enforce it in their official capacities. And without a defendant who can enforce the Act, FSC's claims are no different than claims against the State itself and are thus barred by the State's Eleventh Amendment immunity.

As for standing, FSC is seeking a declaratory judgment that the Act is unconstitutional and to enjoin the Commissioner and the Attorney General from enforcing it. Because neither the Commissioner nor the Attorney General can enforce the Act, they can't be the cause of FSC's injuries. Likewise, enjoining the Commissioner and the Attorney General will do nothing to redress FSC's alleged harm. The relevant question for redressability purposes is whether the effect of the court's judgment *on the defendants* will redress the plaintiff's injuries. Neither an injunction against the Commissioner or the Attorney General nor a declaratory judgment against those defendants deeming the Act to be unconstitutional will do

2

anything to stop private parties from enforcing the Act. FSC thus lacks standing to bring its claims.

Although the result of these two inquiries means that FSC is unable to mount a pre-enforcement challenge to the Act in federal court, the Court cannot ignore its jurisdictional requirements to allow such review; review the Supreme Court recently confirmed is not guaranteed. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 49 (2021). This Court should thus affirm the district court's ruling and hold that FSC's claims are barred by both the State's Eleventh Amendment immunity and because FSC cannot satisfy Article III's case or controversy requirement.

## Statement of the Issues

1.     Whether the district court correctly determined that neither the Commissioner nor the Attorney General have the required duty to enforce the Act or an ability to exercise that duty and that FSC's claims against them thus do not qualify for the *Ex parte Young* exception to Eleventh Amendment immunity.

2.     Whether there is an Article III case or controversy, including whether FSC has standing to bring its claims against the Defendants and whether its claims against the Commissioner are ripe.

## Statement of the Case

### I.    The Act

The Utah Legislature passed the Act in its 2023 General Session. 2023 Utah Laws Ch. 262. The Act requires commercial entities "that knowingly and intentionally publish[] or distribute[] material harmful to minors on the Internet" to "perform reasonable age verification methods to verify the age of an individual attempting to access the material." Utah Code § 78B-3-1002(1). If a commercial entity doesn't do so, it "shall be liable to *an individual* for damages resulting from a minor's accessing the material, including court costs and reasonable attorney fees." *Id*. § 78B-3-1002(3) (emphasis added). There is no mechanism in the Act for a state agency or official to bring criminal or civil charges under the Act. *See id*; Appx. 37[1] (Compl. ¶ 63). Only individuals may sue for damages under the Act. *See* Utah Code § 78B-3-1002(3).

There are three ways a commercial entity can perform the required "reasonable age verification methods." First, a commercial entity can use a "digitized information card." *Id*. § 78B-3-1001(9)(a). A "digitized identification card"[2] is "a data file available on any mobile device which has connectivity to

_____

[1] Cites to Appx. __ refer to the Appendix filed by FSC.

[2] Section 1001(9)(a) refers to a "digitized information card" and notes that term is "defined in this section." Rather than define "digitized

4

the Internet through a state-approved application that allows the mobile
device to download the data file from a state agency or an authorized agent of
a state agency that contains all of the data elements visible on the face and
back of a license or identification card and displays the current status of the
license or identification card." *Id.* § 78B-3-1001(2). Second, a commercial
entity can use an "independent, third-party age verification service that
compares the personal information entered by the individual who is seeking
access to the material that is available from a commercially available
database . . . that is regularly used . . . for the purpose of age and identity
verification." *Id.* § 78B-3-1001(9)(b). Third, a commercial entity can use "any
commercially reasonable method that relies on public or private transactional
data to verify the age of the person attempting to access the material." *Id.*
§ 78B-3-1001(9)(c).

It is not currently possible to utilize the first method—using a
"digitized information card"—to verify a user's age on the internet. Although

---

*information* card," the Utah Legislature defined "[d]igitized *identification*
card." Utah Code § 78B-3-1001(2) (emphasis added). There are no other
references to either "digitized information card" or "digitized identification
card" in the Act. The Court may presume that the Utah Legislature intended
to use these terms interchangeably. *See Douglas S. v. Altius Health Plans,
Inc.*, 409 F. Appx. 219, 223 (10th Cir. 2010) (explaining that when
interpreting Utah law, courts seek "to give effect to the purpose and intent of
the legislature" (internal quotation marks omitted)).

the State, under the Commissioner's oversight, has established a process and system for individuals to obtain an "electronic license certificate or identification card" (the mDL Program), Utah Code § 53-3-235(1), those electronic documents are not required to have the functionality to be used for remote age verification on the internet and they do not yet have such functionality. *See* Appx. 19-20 (Compl. ¶ 18).

## II.    Procedural History

The day the Act went into effect, FSC filed a complaint against the Commissioner and Attorney General seeking declaratory and injunctive relief. Appx. 10-40. It sought a declaratory judgment that the Act violates the First and Fourteenth Amendments and the Commerce and Supremacy Clauses, and sought to enjoin the Commissioner and the Attorney General from enforcing the Act. Appx. 40 (Compl. ¶¶ A-B). FSC also moved for a preliminary injunction. Appx. 41-79. In addition to opposing the motion for preliminary injunction, the defendants moved to dismiss the complaint for lack of standing and because FSC's claims were barred by their Eleventh Amendment sovereign immunity. Appx. 117-28.

The district court granted the defendants' motion to dismiss. Appx. 249-58. It held that because neither the Attorney General nor the Commissioner had any duty to enforce the Act, FSC could not satisfy the *Ex parte Young* exception to Eleventh Amendment immunity. Appx. 251-58. And

6

although the district court did not explicitly analyze standing separate from
its *Ex parte Young* analysis, it also held that relief from the Court would not
redress FSC's injuries and that the claims against the Commissioner were
not ripe. Appx. 256, 257-58.

## Summary of the Argument

The district court correctly dismissed FSC's complaint. Because neither
the Commissioner nor the Attorney General can enforce the Act in their
official capacities, they have sovereign immunity from suit under the
Eleventh Amendment and FSC cannot satisfy the causation and
redressability requirements necessary to establish Article III standing. Both
issues are jurisdictional. So, if the Court rules in favor of the defendants on
either one, it must uphold the district court's order dismissing the complaint.

*Eleventh Amendment Immunity:*  Both the Commissioner and the
Attorney General are immune from suit under the Eleventh Amendment.
Although the *Ex parte Young* exception to Eleventh Amendment immunity
allows a plaintiff to bring suits against state officers in their official
capacities for ongoing violations of federal law, the exception only applies if
the state official has a particular duty to enforce the challenged statute.
Because the Act only allows for a private cause of action, neither defendant
can directly enforce the Act or otherwise has the requisite connection to the
enforcement of the Act.

7

The only connection the Commissioner has to the Act is his duty under a separate statute to establish a process and system for individuals to obtain an "electronic license certificate or identification card." Although such a digital identification card may be used as one form of acceptable age verification under the Act, these digital identification cards do not yet have the functionality to be used for remote age verification on the internet. But nothing in the Act or any other Utah statute requires the Commissioner to provide digital identification cards that have that functionality. Furthermore, using a digital identification card is only one of three possible ways for a commercial entity to comply with the Act. The Commissioner has no connection whatsoever to the other two methods. He has no ability, let alone a duty, to identify, charge, or bring a cause of action against commercial entities that violate the Act. He cannot decide what methods of age verification are reasonable. And he cannot control who gains access to certain material based on the electronic identification card. The Commissioner thus has no connection to the enforcement of the Act and is immune from suit.

The Attorney General's connection to the enforcement of the Act is even more tenuous. An attorney general's generalized duty to enforce state law is not enough to qualify for the *Ex parte Young* exception. But that's the only connection that the Attorney General has to the Act. Because the Act creates

only a private cause of action, the Attorney General has no connection to the enforcement of the Act and is immune from suit.

*Article III Standing*:  To satisfy Article III's case or controversy requirement, plaintiffs bear the burden of demonstrating they have suffered an injury-in-fact, that the injury was caused by the challenged statute, and that the requested relief would likely redress their alleged injuries. Because neither the Commissioner nor the Attorney General has a duty to enforce the Act, FSC cannot satisfy the causation or redressability requirements for standing.

If a named defendant can't enforce the challenged statute, the defendant can't cause the plaintiff's injury. The redressability prong is similar. The question for redressability is whether the effect of the court's judgment *on the defendant* will redress the plaintiff's injury. Because the Act creates only a private cause of action, neither the Commissioner nor the Attorney General can enforce it and thus cannot be the cause of FSC's alleged injuries. Similarly, an order enjoining them from enforcing the Act or a declaratory judgment against them deeming the Act unconstitutional would not redress FSC's alleged injuries. Such an order would not prevent private parties from enforcing the Act. FSC thus lacks standing to bring its claims.

## Argument

The district court correctly held that FSC's claims against the Commissioner and Attorney General were barred by their Eleventh Amendment immunity. And while the district court did not directly address standing, FSC's claims must also be dismissed because FSC's alleged harm is not caused by the defendants and cannot be redressed by a favorable judgment against them. Because there is "no mandatory sequencing of jurisdictional issues," this Court can address the issues in either order and uphold the district court's dismissal on either ground. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (internal quotation marks omitted) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (internal quotation marks omitted)); *WildEarth Guardians v. Bidgain*, 555 F. App'x 815, 816 (10th Cir. 2014) ("When faced with jurisdictional issues involving Eleventh Amendment immunity and Article III standing, the Court can decide which to address first."). This Court reviews both questions of Eleventh Amendment immunity and standing de novo. *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 756, 760 (10th Cir. 2010).

I.   **The Commissioner and Attorney General are immune from suit and do not qualify for the *Ex parte Young* exception to their Eleventh Amendment immunity.**

The Eleventh Amendment is a jurisdictional bar that "constitutionalizes the doctrine of state sovereign immunity." *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021). It protects the state against suits brought against it in federal court unless the state has consented to suit. *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009). This sovereign immunity extends to suits brought against state officials acting in their official capacities. *Hendrickson*, 992 F.3d at 965. That's because such official capacity suits "are no different from a suit against the State itself." *Id.* (internal quotation marks omitted).

There are exceptions to this immunity. Under the *Ex parte Young* exception, a plaintiff may sue individual state officials in their official capacities if the plaintiff alleges an ongoing violation of federal law and seeks only prospective relief. *Id.* This exception "rests on the premise . . . that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Virginia Off. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011).

To satisfy the *Ex parte Young* exception, the named state official "must have some connection with the enforcement" of the challenged statute. *Ex parte Young*, 209 U.S. 123, 157 (1908). Although the state official does not need to have a "special connection" to the challenged statute, he or she must "have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty." *Hendrickson*, 992 F.3d at 965. The key "nexus" is "between the defendant and '*enforcement*' of the challenged statute." *Peterson v. Martinez*, 707 F.3d 1197, 1206 (10th Cir. 2013) (quoting *Ex parte Young*, 209 U.S. at 157). That's because if the state official doesn't have the required connection to the "enforcement" of the challenged statute, the plaintiff "is merely making [the state official] a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157.

FSC tried to avail itself of the *Ex parte Young* exception by suing the Commissioner and Attorney General in their official capacities. But as the district court correctly held, neither of them has any duty to enforce the Act or an ability to exercise that duty. Appx. 250-57. FSC is therefore simply attempting to make the State a party to the suit and the Eleventh Amendment bars its claims.

### A.  Commissioner Anderson has no connection to the enforcement of the Act.

FSC does not contend that the Commissioner has a direct role in enforcing the Act. Indeed, he can't bring a cause of action under the Act in his official capacity. *See* Utah Code § 78B-3-1002(3) ("A commercial entity that is found to have violated this section shall be liable to *an individual* for damages . . . ." (emphasis added)); Appx. 37 (Compl. ¶ 63) ("[T]he Act creates a *private* right of action by which Utah residents—and not state actors—are empowered to do the State's bidding . . . ."). Instead, FSC contends that the Commissioner has the required connection to the enforcement of the Act because "[h]e is statutorily tasked with administrating the Driver License Division that manages the mDL Program that provides the State's only 'digitized identification card' and thus the only State-assured 'reasonable age verification method' compliant with the Act." Aplt. Br. at 13 (quoting Utah Code § 78B-3-1001(2)). The district court correctly held that this connection was "simply too attenuated to provide the connection required by *Ex parte Young*." Appx. 256. There are at least three reasons why this is so.

1.  Despite what FSC suggests, the State-issued digitized identification card is not the only method for performing the "reasonable age verification" the Act requires. *See* Aplt. Br. at 13. In addition to verifying age with a digitized identification card, a commercial entity can verify age by

13

using an independent third-party age verification service that compares personal information entered to material available from a commercially available database or any commercially reasonable method that relies on public or private transactional data. Utah Code § 78B-3-1001(9)(b)-(c). FSC does not allege that the Commissioner has any connection to these other methods of reasonable age verification or that they are unavailable to FSC or its members.

2.      Even if the State-issued digitized identification card was the only way to comply with the Act, the Commissioner has no duty to provide an electronic identification card that can be used for remote age verification on the Internet. Although the Commissioner statutorily oversees the Driver License Division (DLD), *see* Utah Code §§ 53-1-104(3)(d), -108(1)(a); 53-3-103(2), nothing in the Utah Code or the DLD's regulations require it to create a digitized identification card with such functionality.

In 2019, the Utah Legislature passed a bill requiring the DLD to establish "a pilot program for a process and system for an individual to obtain an electronic license certificate or identification card" by January 1, 2021. Utah Code § 53-3-235(1)(a). And based on the results of that pilot program, the DLD was to "establish a process and system for an individual to obtain an

14

electronic license certificate or identification card" by January 1, 2022.[3] *Id.*

§ 53-3-235(1)(b). Per this directive, the DLD, under the Commissioner's

administration, has established the mDL Program. *See* Utah Mobile Driver

License (mDL) Program, https://dld.utah.gov/utahmdl/.

The mDL Program can't currently be used remotely over the internet;

although it may have that functionality in the future. *See* Utah mDL FAQs,

What is the future of mDL?, https://dld.utah.gov/mdlfaqs/; Appx. 19-20

(Compl. ¶ 18). But nothing in section 53-3-235, the DLD's regulations, or the

Act requires the Commissioner to create a "digitized identification card" with

that functionality. All that the DLD must do is "establish a process and

system" for individuals to obtain "evidence, in an electronic format . . . of a

privilege granted . . . to drive a motor vehicle." Utah Code §§ 53-3-102(17),

-235(1)(b). The DLD, under the Commissioners direction, has done this with

the mDL Program. Because the Commissioner does not have a duty to

provide a digitized identification card with the functionality to verify age over

---

[3] "Electronic license certificate" is defined as "the evidence, in an electronic format as described in Section 53-3-235, of a privilege granted under this chapter to drive a motor vehicle." Utah Code § 53-3-102(17). "Identification card" is defined as "a card issued under Part 8, Identification Card Act, to a person for identification purposes." *Id.* § 53-3-102(22). An "identification card" must include, among other things, the name, birth date, and Utah residence address of the individual and a photograph of the individual. *Id.* § 53-3-805(2)(a). There is no definition in the Utah Uniform Driver License Act for "electronic identification card."

the internet, he has no connection to the enforcement of the Act and is not in "dereliction of duty" for not providing it. *See* Aplt. Br. at 14; *see also* Aplt. Br. at 29 ("Every day that the Commissioner fails to perform his duty to administer an mDL program suitable for online verification as contemplated by the . . . Act is another day in which he exacerbates the constitutional injury that he was tasked with mitigating.").

3.      Even assuming the Commissioner has some duty to provide a "digitized identification card" that can verify age over the internet and that the "digitized identification card" is the only available method for "reasonable age verification," the Commissioner's administration of the mDL Program does not provide the requisite connection to the enforcement of the Act to qualify for the *Ex parte Young* exception. Defendants are not aware of any case that goes so far as to apply the *Ex parte Young* exception when a defendant has no connection with the actual enforcement of a statute but rather just has a role in administering an otherwise independent program that the statute might reference or utilize. *See Peterson*, 707 F.3d at 1206 ("*Ex parte Young* requires a nexus between the defendant and '*enforcement*' of the challenged statute.").

FSC contends that *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818 (10th Cir. 2007), is such a case. It's not. In that case, an Indian tribe challenged a Kansas law that required all vehicles operating in the state to

16

be either registered by the state or, for non-residents, to be registered in their home state so long as their home state reciprocally recognized Kansas's registrations and titles. *Id.* at 821. A tribal law required all members of the tribe to register their vehicles with the tribe and surrender all titles issued by other jurisdictions. *Id.* at 820. Kansas officials took the position that the reciprocity provision did not apply to members of the tribe because they were not non-residents and enforced the law against members of the tribe. *Id.* at 821

The tribe named the Kansas secretary of revenue, director of vehicles, and superintendent of the highway patrol as defendants, all in their official capacities. *Id.* at 828. This Court held that the *Ex parte Young* exception applied because each official had "some connection" to the enforcement of the law and had "assisted or currently assist in giving effect to the law." *Id.* Specifically, the director of vehicles and the secretary of revenue were the state officials who decided to deny the validity of the tribe's registrations. *Id.* And the superintendent of the highway patrol directly enforced traffic and vehicle laws such as the law at issue. *Id.*

The officials in *Wagnon* had a far stronger connection to the enforcement of the Kansas law than the Commissioner does to the Act. Even assuming he has a duty to provide a "digitized identification card" that can be used for age verification on the internet, he cannot identify, charge, or bring a

cause of action against commercial entities that might violate the Act. He cannot decide what methods of age verification are reasonable. And he cannot choose how the digitized identification card might be utilized. His only potential connection to the Act is to develop a digitized identification card. This is not sufficient to satisfy the *Ex parte Young* exception.

The Commissioner's limited connection to the Act is more like that of the state defendants in *Balogh v. Lombardi*, 816 F.3d 536 (8th Cir. 2016), and *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013), both cases where the courts held that the *Ex parte Young* exception did not apply. In *Balogh*, a civil rights group and one of its employees sued the director of the Missouri Department of Corrections to challenge a statute that protected the confidentiality of members of an execution team. 816 F.3d at 539. Like the Act, the statute at issue created only a private cause of action. *Id.* at 539-40. It allowed any person whose identity was disclosed in violation of the law to bring a civil action against the person who disclosed the information. *Id.* at 540. Plaintiffs alleged that the director had a connection with the enforcement of the statute because, even though he could not bring a cause of action under it, he had the authority to select the members of the execution team and thus select those individuals who might someday have a cause of action under the statute. *See id.* at 546. The Eighth Circuit rejected the argument that this was a sufficient connection to the enforcement of the

18

statute to satisfy the *Ex parte Young* exception. *Id.* It held that the director's authority "constitute[d] implementation of the statute in an administrative or ministerial sense" and was "not analogous to enforcing the" statute. *Id.*

Similarly, in *Peterson*, this Court held that the executive director of the Colorado Department of Public Safety did not have the requisite connection to the enforcement of a gun registration law to satisfy the *Ex parte Young* exception. 707 F.3d at 1206-07. The plaintiff in that case challenged a Colorado law that limited concealed handgun licenses to state residents. *Id.* at 1201. The state granted reciprocity and recognition for licenses issued by other states, but only if those states also provided reciprocity to Colorado residents. *Id.* at 1202. Although the law required local sheriffs to administer and implement the licensing scheme, the plaintiff alleged that the executive director maintained a database of states with which Colorado had reciprocity, and that this undertaking provided the necessary connection to enforcing the reciprocity provision. *Id.* at 1206. This Court disagreed. Regardless of whether the executive director maintained such a list, he was not required to enforce the statute—sheriffs were. *Id.* Thus, this Court held that the *Ex parte Young* exception did not apply to claims against the executive director. *Id.* at 1206-07.

Like maintaining a list of states recognizing reciprocity in *Peterson* and selecting the execution team in *Balogh*, the only connection to the Act that

19

the Commissioner has is creating a digital identification card that could potentially be used by commercial entities to conduct "reasonable age verification." Other than administering that program, the Commissioner has no connection to the Act and cannot bring a cause of action under it. This connection is not sufficient for the *Ex parte Young* exception. If it were, the Commissioner could be a defendant in any suit challenging a law that required identity or age verification of any kind and where a Utah driver's license was an appropriate form of identification. The *Ex parte Young* exception is not that broad. *See Elephant Butte Irr. Dist of N.M. v. Dep't. of Interior*, 160 F.3d 602, 607 (10th Cir. 1998) (characterizing the exception as "narrow").

### B.    The Attorney General has no connection to the enforcement of the Act.

The *Ex parte Young* exception does not apply to state officials whose only connection to the enforcement of the challenged statute is their "generalized duty to enforce state law." *Hendrickson*, 992 F.3d at 965 (quoting *Bishop v. Oklahoma*, 333 F. App'x 361, 365 (10th Cir. 2009)); *see also* 13 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 3524.3 (3d ed., April 2023 Update) ("[T]he duty must be more than a mere general duty to enforce the law."). This is especially true in cases like this one where the statute provides only a private cause of action. In those cases, a state

attorney general has no role in enforcing the statute in his official capacity and is immune from suit. *See Whole Woman's Health*, 595 U.S. at 43-45; *Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 960-62 (8th Cir. 2015); *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341-42 (11th Cir. 1999); *Hope Clinic v. Ryan*, 195 F.3d 857, 875-76 (7th Cir. 1999), *rev'd on other grnds. by Christensen v. Doyle*, 530 U.S. 1271 (2000); *see also Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 904-05 (10th Cir. 2012) (distinguishing between a law with only a private cause of action and one where the attorney general had "special enforcement authority").

Like the Commissioner, the Attorney General has no authority to bring a cause of action under the Act in his official capacity. *See* Utah Code § 78B-3-1002(3). FSC tries to get around the Attorney General's lack of direct enforcement power in two ways. First, FSC contends that despite the authorities stating otherwise, a generalized duty to enforce state law *is* enough to satisfy the *Ex parte Young* exception. Second, FSC contends that the Attorney General has specific duties that relate to the Act's enforcement. These arguments don't establish that the Attorney General has the required connection to the enforcement of the Act.

### 1. FSC cannot escape the well-established rule that a state official's general duty to enforce state law will not satisfy the *Ex parte Young* exception.

The rule that an attorney general's general duty to enforce state law, without more, cannot satisfy the *Ex parte Young* exception is well established not just in this Court, but around the country. *E.g.*, *Hendrickson*, 962 F.3d at 967; *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1300 (11th Cir. 2019) (en banc); *Digit. Recognition Network*, 803 F.3d at 960-63; *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (per curiam) ("We doubt that the general supervisory powers of the California Attorney General are sufficient to establish the connection with enforcement required by *Ex parte Young*."); *cf. Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (6th Cir. 2001) (same for governor); *Citizens Union City of New York v. Att'y Gen. of N.Y.*, No. 16-cv-9592, 2017 WL 2984167, at *4 (S.D.N.Y. June 23, 2017) (governor). But FSC says that this Court recognized the opposite in *Petrella v. Brownback*, 697 F.3d 1285 (10th Cir. 2012), and that the only way to get around *Petrella*'s holding is if the statute at issue expressly disclaims the attorney general's power to enforce it. Aplt. Br. at 16-18. This isn't the law.

In *Petrella*, plaintiffs named, among others, the Kansas governor and attorney general as defendants in a challenge to a school-funding statute. 697 F.3d at 1291. With no analysis and a bare citation to a statutory and constitutional provision setting forth their general duties, this Court stated

that "[i]t cannot seriously be disputed that the proper vehicle for challenging the constitutionality of a state statute, where only prospective, non-monetary relief is sought, is an action against the state officials responsible for enforcement of that statute" or "that the Governor and Attorney General of the state of Kansas have responsibility for the enforcement of the laws of the state."[4] *Id.* at 1293-94.

Unlike the Act, the statute at issue in *Petrella* did not authorize a private cause of action, let alone *only* a private cause of action. *See* Kan. Stat. § 72-6405 *et seq.* (2011). Indeed, it doesn't appear that the statute in *Petrella* authorized *any* cause of action. Contrary to *Petrella*, when, as in this case, the legislature vests enforcement authority in the hands of either private parties or other state officials, the attorney general has no duty to enforce the statute at issue and the *Ex parte Young* exception will not apply. *See Whole Woman's Health*, 595 U.S. at 43-45; *Hendrickson*, 992 F.3d at 967-68; *Edmondson*, 594 F.3d at 760; *Digit. Recognition Network,* 803 F.3d at 960-62; *Summit Med. Assocs., P.C.*, 180 F.3d at 1341-42; *Hope Clinic*, 195 F.3d at 875-76.

As the district court explained, this case is more like *Hendrickson* (which distinguished *Petrella*), *Whole Woman's Health*, and *Edmondson*.

---

[4] This Court noted that the other defendants—state school board officials and the Commissioner of Education—were proper defendants based on its decision an earlier school funding case. *Petrella*, 697 F.3d at 1294.

23

Appx. 253-55, 257. In *Hendrickson*, this Court held that the New Mexico
governor and attorney general had Eleventh Amendment immunity against a
claim that a public employee bargaining law violated the plaintiff's First
Amendment rights. 992 F.3d at 956, 965. This Court reached that conclusion
because the law was enforceable only by a state public employee labor
relations board; a board insulated from the governor and the attorney
general. *Id.* at 966. Because the governor and attorney general's connection to
the statute "stem[med]" only "from their general enforcement power," they
were not proper parties. *Id.* at 967. That's also how this Court distinguished
*Petrella*—because "the statutory scheme vest[ed] enforcement power in . . . a
body independent of the Governor and Attorney General." *Id.* at 967-68.

    The Supreme Court's decision in *Whole Woman's Health* is even more
similar. In that case, petitioner abortion providers brought a pre-enforcement
challenge to a Texas law that prohibited physicians from performing
abortions. *Whole Woman's Health*, 595 U.S. at 35. Like the Act, the Texas law
did not permit state officials to bring criminal prosecutions or civil
enforcement actions. *Id.* at 35-36. Instead, it provided only a private cause of
action against those who performed abortions. *Id.* at 36. The Court held that

because the attorney general could not enforce the law, the *Ex parte Young* exception did not apply to the claims against him.[5] *Id.* at 43-44.

FSC criticizes the district court for relying on *Hendrickson* and *Whole Woman's Health*. Aplt. Br. at 17-18, 31. It says that those cases involved statutes that expressly precluded the attorney general's involvement and that the only way to avoid the result of *Petrella* is when the statute *expressly disclaims* the state official's ability to enforce the law.[6] *See* Aplt. Br. at 18, 31. But that's not the standard for determining whether the *Ex parte Young* exception applies. The crucial question is whether the public official has "a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Hendrickson*, 992 F.3d at 965 (internal

---

[5] The Court did find that the *Ex parte Young* exception applied to claims against state licensing officials who were tasked with taking enforcement actions against individuals who violated provisions of the Texas Health and Safety Code, which included the challenged statute. *Whole Woman's Health*, 595 U.S. at 45-46.

[6] FSC says that the statute at issue in *Hendrickson* "expressly divested" the attorney general and governor of "supervisory authority." Aplt. Br. at 17. This is not true. The statute states that the public employee board "has the power to enforce provisions of the" statute. N.M. Stat § 10-7E-9 (2020). This Court didn't say otherwise—just that "[t]he New Mexico Supreme Court has held that the governor cannot remove [board] members at will" and the "statutory scheme vests enforcement power in the [board], a body independent of the Governor and the Attorney General." *Hendrickson*, 992 F.3d at 966, 968.

quotation marks omitted). When a statute vests that enforcement authority solely with private parties or other state officials, that test can't be met.

If the rule were as FSC says it should be—that based on his or her general duty to enforce state law a state attorney general is a proper defendant in any suit challenging a statute so long as that statute does not "expressly preclude[]" the attorney general's involvement—a state attorney general would be a proper defendant in *any* suit challenging a state law absent such a disclaimer. *See* Aplt. Br. at 18. The Supreme Court has long held that this can't be. *See Fitts v. McGhee*, 172 U.S. 516, 530 (1899) (explaining that allowing suits against the attorney general and governor based only on their general duties to enforce state law "would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.").

FSC further attempts to distinguish *Hendrickson* by stating that "those assigned the <u>primary</u> enforcement role under the . . . Act are not other government actors amenable to affirmative challenge (as in *Hendrickson*), but putative private litigants who cannot be haled into court to defend the constitutionality of the law." Aplt. Br. at 18. But the Supreme Court

confirmed in *Whole Woman's Health* that this fact doesn't matter. The Court explained that there is no "unqualified right to pre-enforcement review of constitutional claims in federal court" and that "those seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments." 595 U.S. at 49. That there might not be an avenue for FSC to challenge the Act at this time in federal court is irrelevant. Indeed, as the Court pointed out, "many federal constitutional rights are . . . asserted typically as defenses to state-law claims, not in federal pre-enforcement cases." *Id.* at 49-50.

Lastly, FSC contends that the district court misapplied this Court's decision in *Edmondson*. Aplt. Br. at 20-22. Contrary to what FSC says, that case supports the Attorney General's position. In *Edmondson*, this Court analyzed whether the Oklahoma attorney general was immune from challenges to separate sections of an Oklahoma statute. 594 F.3d at 750. One section, 7(B), prohibited any contractor from contracting with a public employer unless the contractor used a particular work eligibility verification system. *Id.* at 753-54. The other section, 7(C), made it a discriminatory practice for an employer to discharge a U.S. citizen employee while retaining an employee that the employer knew was unauthorized. *Id.* at 754. An employer who violated section 7(C) was subject to investigation and suit by

27

the Oklahoma Human Rights Commission. *Id.* This Court reached different conclusions about the attorney general's connection with the two sections.

This Court held that the attorney general had a connection to the enforcement of section 7(B). *Id.* at 757-58, 760. Relying on his statutory duty to draft contracts for state officials and to defend state agencies sued by their contractors, the Court held that he was not entitled to Eleventh Amendment immunity against that claim. *Id.* at 757-58, 760. These duties were enough to create "a particular duty to enforce [section 7(B)] and a demonstrated willingness to exercise that duty." *Id.* at 760. But this Court reached a different conclusion about the antidiscrimination provision in section 7(C), which was enforceable only by the Oklahoma Human Rights Commission. *Id.* It held that the attorney general was entitled to sovereign immunity for that claim because the plaintiffs did "not show[] . . . that the Attorney General ha[d] a particular duty to enforce" that section." *Id.* at 760.

FSC thinks this Court would have analyzed section 7(C) differently if plaintiffs had pointed to the attorney general's general law enforcement authority. Aplt. Br. at 21-22. The only reason this Court ruled as it did, FSC argues, was because the "plaintiffs[] fail[ed] to connect the dots." *Id*. At the outset, FSC's assumption that this Court would have ruled differently had the parties made different arguments is improper. *See In re C.W. Mining Co.*, 740 F.3d 548, 556 (10th Cir. 2014) ("Questions which merely lurk in the

28

record of earlier cases, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (cleaned up)). But, more importantly, this Court's separate analyses and different conclusions about sections 7(B) and 7(C) adhere to its precedent. And they highlight why, in this case, the Attorney General has no connection to the enforcement of the Act. Like the section 7(C) anti-discrimination provision in *Edmondson*, the Attorney General has no authority and no duty to enforce the Act and he should be immune from suit.

There is no question that the law in this Circuit is that an attorney general's general law enforcement duties, standing alone, do not create the required connection to the enforcement of the challenged statute. Because the Attorney General has no connection to the Act outside of his general law enforcement duties, the *Ex parte Young* exception cannot apply.

>    **2.    The Attorney General's specific statutory duties do not provide any connection to the enforcement of the Act.**

FSC points to two of the Attorney General's statutory duties—that he "take charge, as attorney, of all civil matters in which the state is interested," Utah Code § 67-5-1(1)(b), and that he give his "opinion in writing and without fee, when required, upon any question of law relating to the office of the requestor . . . (i) to the Legislature or either house; (ii) to any state officer, board, or commission; and (iii) to any county attorney or district attorney." *Id.*

§ 67-5-1(g). Neither of these provisions provides any connection to the enforcement of the Act outside of the Attorney General's "generalized duty to enforce state law." *Hendrickson*, 992 F.3d at 967.

FSC doesn't explain how the first duty—taking charge of civil matters in which the state is interested—creates a connection to the enforcement of the Act. But Courts have already determined that similar duties in other state's laws do not create the required connection. *See Digit. Recognition Network.*, 803 F.3d at 962; *Waste Mgmt. Holdings, Inc.*, 252 F.3d at 330-31; *Lewis v. Governor of Ala.*, 944 F.3d at 1300. Even if the Attorney General were to intervene in a case among private parties challenging the constitutionality of the Act, that general power would not create the required connection to the enforcement of the Act. *See Digit. Recognition Network*, 803 F.3d at 962.

As for the second requirement—that the Attorney General give his opinion in writing to state officers—FSC contends that it was the reason this Court held that the Attorney General was a proper defendant in a case challenging Utah's prohibition on same-sex marriage. Aplt. Br. at 18-19. In that case, *Kitchen v. Herbert*, this Court explained that the Governor and Attorney General "explicitly t[ook] the position . . . that they ha[d] ample authority to ensure that the . . . County Clerk . . . compli[ed] with Utah law" regarding issuing marriage licenses. 755 F.3d 1193, 1202 (10th Cir. 2014)

30

(internal quotation marks omitted). Because issuing a marriage license in violation of state law was a misdemeanor, a district attorney could file charges against the county clerk, under the supervision of the Attorney General. *Id.* The Governor had ordered county clerks to consult with the Attorney General in responding to the district court's order invalidating the law. *Id.* at 1203. And this Court held that the Governor and Attorney General had exercised a willingness to exercise their duty to enforce the law because they had advised state agencies, such as the tax commission, on issues relating to the law and the district court's decision invalidating it. *Id.* at 1203. Unlike in *Kitchen*, where the Attorney General played a significant role in enforcing the same-sex marriage ban, here the Attorney General has no connection to the enforcement of the Act.

FSC criticized the district court for distinguishing *Kitchen* based on the Attorney General's "actual exercise of supervisory power" and "authority to compel compliance" in that case. Aplt. Br. at 19 (quoting Appx. 254 n.24). It argues that, like for the tax commission in *Kitchen*, the Attorney General may be required to offer his written opinion to the Commissioner or direct the Commissioner to administer the mDL Program in certain ways. Aplt. Br. at 19-20. But advising the Commissioner about providing a "digitized information card" that might be used by a private party to comply with the Act's age verification requirement that the Attorney General cannot

31

otherwise enforce is nowhere near the level of connection he had to the statute at issue in *Kitchen*. And even if this general type of duty could be sufficient to create a connection to the enforcement of the Act, it would depend on the Commissioner also having a connection to the enforcement of it, which, as discussed above, he does not have.

Because the Act includes only a private cause of action, the Attorney General cannot enforce it and his generalized duties to enforce state law are insufficient to qualify for the *Ex parte Young* exception.

## II.    **FSC cannot satisfy Article III's case or controversy requirement.**

Regardless of Eleventh Amendment immunity, the district court correctly held that FSC lacks standing to bring its claims and that any claim against the Commissioner was not ripe.[7] To satisfy Article III's case or controversy requirement, a plaintiff must allege that he or she has or will suffer an imminent injury in fact that has a causal connection to the defendant and is redressable by a favorable court decision. *Nova Health Sys.*

---

[7] Defendants moved to dismiss FSC's complaints based on both standing and Eleventh Amendment immunity. Appx. 117-29. Although the district court did not directly address standing, it mentioned that FSC's injuries were not redressable. Appx. 257-58. Because standing is a jurisdictional question, "a federal appellate court may raise [it] at any time, regardless of whether the district court expressly addressed the question." *Bd. of Cnty. Comm'rs v. Geringer*, 297 F.3d 1108, 1111 (10th Cir. 2002) (cleaned up).

*v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005). A plaintiff "must have standing to seek each form of relief in each claim." *Collins v. Daniels*, 916 F.3d 1302, 1312 (10th Cir. 2019) (internal quotation marks omitted). As the party seeking to invoke federal jurisdiction, FSC bears the burden of establishing that it meets each of the three standing elements. *Nova Health*, 416 F.3d at 1154.

Courts often intermix their standing and *Ex parte Young* analyses. That's because the two analyses share a "common denominator"—"[w]hether state officials are, in their official capacities, proper defendants in a suit." *Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013) (cleaned up). Despite this "common denominator" they are still "two separate inquiries." *Id.*; *see also Edmondson*, 594 F.3d at 756-60 (analyzing standing and *Ex parte Young* separately). Analyzing the causation and redressability prongs of standing, which FSC cannot meet, further illustrates why FSC's claims are untenable and must be dismissed.

### A. FSC cannot demonstrate that its injuries are caused by the Commissioner or the Attorney General or that a favorable decision against those officials will redress its injuries.

To satisfy the causation requirement, a plaintiff's injury must be "fairly traceable to the challenged *action of the defendant*, and not the result of some third party not before the court." *Bronson v. Swenson*, 500 F.3d 1099,

1109 (10th Cir. 2007) (internal quotation marks omitted). Like in the *Ex parte Young* analysis, this means that "when a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element . . . requires the named defendants to possess authority to enforce the complained-of provision." *Id.* at 1110.

Causation and redressability often "overlap as two sides of a causation coin." *Nova Health*, 416 F.3d at 1159 (internal quotation marks omitted). To satisfy the redressability requirement, a plaintiff must show that a favorable judgment will relieve a discrete injury. *Id.* at 1158. As with causation, a plaintiff cannot satisfy this requirement if he or she seeks relief against a defendant who has no power to enforce the challenged statute. *Bronson*, 500 F.3d at 1111. That's because the question for redressability purposes is whether the "effect of the court's judgment *on the defendant* . . . redresses the plaintiff's injury." *Nova Health*, 416 F.3d at 1159 (emphasis added).

Focusing on the defendants is especially important when reviewing standing to bring claims for declaratory and injunctive relief. For standing purposes, the mere enactment of a statute without some action by the defendants can't satisfy the causation and redressability requirements. *See id.* at 1157; *Whole Woman's Health*, 595 U.S. at 50 ("[T]he chilling effect associated with a potentially unconstitutional law being on the books is insufficient to justify federal intervention in a pre-enforcement suit."

34

(internal quotation marks omitted)). A declaratory judgment that a statute is unconstitutional will only satisfy the redressability requirement if the defendant has a duty to enforce the statute. *Nova Health*, 416 F.3d at 1159. Detering future litigants from relying on the statute in future suits in state court is not sufficient. *Id.* at 1159. That's because "[t]he Court may not assume that everyone (including those who are not proper parties to an action) will honor the legal rationales that underlie their decrees." *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 892 (10th Cir. 2011) (internal quotation marks omitted). Otherwise, "redressability [would] always exist." *Nova Health*, 416 F.3d at 1159 (internal quotation marks omitted).

Along the same lines, federal courts may enjoin only "named defendants from taking specified unlawful actions" and cannot "enjoin the world at large or purport to enjoin challenged laws themselves." *Whole Woman's Health*, 595 U.S. at 44 (cleaned up). An injunction prohibiting a state official from enforcing a challenged law does nothing to redress a plaintiff's threatened injury suffered at the hands of those tasked with enforcing the statute. *See id.*; *Nova Health*, 416 F.3d at 1158-59.

The *Nova Health* and *Whole Woman's Health* decisions are both similar to this case and illustrate why FSC cannot satisfy the causation and redressability elements. In *Nova Health*, an abortion provider challenged an Oklahoma law that made abortion providers who performed abortions on

35

minors without parental consent or knowledge liable for the cost of any subsequent medical treatment needed because of the abortion. 416 F.3d at 1152-53. The plaintiff sought declaratory and injunctive relief against various officials, in their official capacities, who oversaw certain public healthcare facilities in Oklahoma. *Id* at 1152. As in this case, the law authorized only a private cause of action and the public official defendants were not tasked with enforcing it on the state's behalf.[8] *Id.* at 1158. This Court held that the plaintiff could not satisfy the causation or redressability elements of standing. *Id.* at 1157-60. As to causation, this Court explained that the plaintiff's injury (a loss of patients) was not based on anything the named defendants had done. *Id.* at 1157. Rather, the plaintiff's injury was a response to the enactment of the statute in question. *Id.* (explaining that the plaintiff "confused the *statute's* immediate coercive effect on the plaintiff with any coercive effect that might be applied by the *defendants*" (cleaned up)).

This Court also held that any judgment against the named defendants would not redress the plaintiff's injury. *Id.* at 1158-60. Because the

---

[8] In addition to allowing the minors to recover their medical expenses, the statute allowed medical facilities to recover certain treatment costs that their minor patients did not reimburse. *Nova Health*, 416 F.3d at 1156. The named defendants thus might have been able to bring a cause of action under the statute. But their ability to do so did not stem from their official state titles and was no different than any other medical provider, public or private. *Id.* at 1157-58.

defendants were not tasked with enforcing the law, even if the defendants were enjoined, "there would still be a multitude of other prospective litigants who could potentially sue [the plaintiff] under the act" and "a judgment in [the plaintiff's] favor would do nothing to prevent lawsuits against [the plaintiff] by the minor patients who actually require subsequent medical care, or by any doctors or non-defendant hospitals and medical clinics who may treat them." *Id.* at 1159. This Court also rejected the "argument that a favorable declaratory judgment against the[] defendants would redress its injury by deterring other potential litigants from relying on [the statute], even in state court." *Id.* It did so because the argument "overlooks the principle that it must be the effect of the court's judgment on the defendant that redresses the plaintiff's injury." *Id.*

The Supreme Court recently reiterated these principles in *Whole Woman's Health*. As discussed above, that case involved a challenge to a Texas abortion statute that allowed only a private cause of action. 595 U.S. at 35-36. The Court refused to allow the plaintiffs' claims against the Texas attorney general to go forward. *Id.* at 43-45. It explained that even if the attorney general had some enforcement authority and the Court entered an injunction against him, it could not "parlay that authority, or any defendant's enforcement authority, into an injunction against any and all unnamed private persons who might seek to bring their own . . . suits" under the

37

statute. *Id.* at 44. The Court held that its "traditional limits on . . . jurisdiction" did not allow the suit against the attorney general. *Id.* at 51.

As in *Nova Systems* and *Whole Woman's Health*, neither the Commissioner nor the Attorney General has the authority to enforce the Act. Rather, suits may only be brought by private individuals. *See* Utah Code § 78B-3-1002(3). The defendants thus can't have caused FSC's alleged injuries. Similarly, an injunction against either of them would have no practical effect on FSC. Even if the Commissioner and Attorney General were enjoined from enforcing the Act, private individuals could still bring claims against commercial entities for damages suffered by minors. And while a declaratory ruling that the Act is unconstitutional might discourage private parties from bringing suits for damages against FSC's members who are commercial entities subject to the Act or cause them to disregard it, this relief has no relationship to the Commissioner or the Attorney General and thus cannot satisfy the redressability requirement. *See Nova Health*, 416 F.3d at 1159 ("[I]t must be the effect of the court's judgment on the defendant that redresses the plaintiff's injury, whether directly or indirectly.").

Because neither the Commissioner nor the Attorney General has any role in enforcing the Act, they cannot cause FSC any injury and a favorable ruling against them would do nothing to redress FSC injuries.

**B.     FSC's case or controversy arguments are meritless.**

Largely ignoring this precedent, FSC contends that an order enjoining

the Commissioner and/or the Attorney General and declaring that the Act is

unconstitutional would satisfy the causation, ripeness, and redressability

requirements. Each of these arguments fails.

*Injunctive Relief Against the Commissioner*:  FSC says that its injuries

are "in part, <u>caused</u> by the Commissioner's provision of an mDL program that

lacks the technological functionality to be of any use to the Plaintiffs seeking

digital passage online and <u>redressed</u> by an injunction precluding the

Commissioner's continued administration of the inadequate program absent

substantial improvements." Aplt. Br. at 24. It appears that FSC is now

asking for an order—essentially a writ of mandamus—compelling the

Commissioner to create a digitized identification card with the functionality

required to verify age over the internet. But that's not what FSC said in its

complaint. There, FSC explained that to "protect[] the constitutional rights at

issue" it was necessary to "enjoin[] the Commissioner . . . from permitting its

data files to be downloaded for use by the mDL Program." Appx. 37

(Compl. ¶ 63); *see also* Aplt. Br. at 23 ("[A]n injunction precluding Defendants

from participating in [the Act's] enforcement would spare Plaintiffs from at

least some of the harm caused by the Act."). Nor did FSC request such relief

in its motion for preliminary injunction. *See* Appx. 41-79.

Even assuming the relief FSC now seeks is available, it will not redress FSC's alleged constitutional injuries, all of which relate to the inability to access material without engaging in any age verification.[9] Commercial entities subject to the Act will be required to perform reasonable age verification methods regardless of whether the Commissioner must provide a functional digitized information card.

*Ripeness of the Claims Against the Commissioner*:  This argument also demonstrates why the district court correctly held that FSC's claims against the Commissioner were not ripe. Appx. 256. As discussed above, the Commissioner has no duty to create a digitized identification card that has the functionality to remotely verify age on the internet and has not yet done so. Any argument about how the Commissioner may implement such a program in the future cannot create an imminent injury and cannot be ripe. *See Qwest Commc'ns Int'l, Inc. v. F.C.C.*, 240 F.3d 886, 893 (10th Cir. 2001) ("The ripeness doctrine prevents the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over

---

[9] FSC outlines its purported injuries in a footnote in its response to Defendants motion to dismiss. Appx. 199 n.2. Notably, *none* of the alleged injuries are ones that would be redressed if the mDL Program had the functionality to verify age over the internet. Rather, they are all related to the age verification requirement itself, not the "digitized identification card" method that is currently unusable. *See id.*

administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." (cleaned up)).

To the extent FSC contends that the Commissioner might operate the mDL program in a way that is unconstitutional—only doing business with certain websites or charging inappropriate fees—and that this is enough of an imminent threatened injury to make the issue ripe, Aplt. Br. at 27-29, the cases it cites don't support this. Those cases involve threatened *enforcement* of a statute by a state actor, *see Am. Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1154-55 (10th Cir. 1999); *Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 910 (10th Cir. 2008) (potential to enforce water laws by denying permit), or review of an administrative policy that was already in effect, *see Roe No. 2 v. Ogden*, 253 F.3d 1225, 1231 (10th Cir. 2001). Here, there is no threatened enforcement by the Commissioner and no method for remote age verification to review. Because the Commissioner has no duty to adopt a program that allows for remote age verification over the internet and has not yet created such a program, any claims relating to how he might administer such a program in the future cannot be ripe.

*Injunctive Relief Against the Attorney General*: FSC relies on *Edmondson* to argue that its injuries are "at least partially <u>caused</u> by the Attorney General and <u>redressed</u> by an injunction precluding *his* role in the

41

Act's enforcement." Aplt. Br. at 25. As discussed above, in *Edmondson*, this
Court analyzed whether plaintiffs had standing to challenge separate
sections (7(B) and 7(C)) of an Oklahoma statute that regulated employment
verification and work eligibility status, and whether their claims against the
state defendants satisfied the *Ex parte Young* exception. 594 F.3d at 753-55.
Because the attorney general had a connection to the enforcement of section
7(B) (which required state contractors to use a specific employment
verification system) based on his duty to draft public contracts and defend
state agencies against suits by their contractors, this Court held that the
plaintiffs had standing to bring that claim and that it was not barred by
Eleventh Amendment immunity. *Id.* at 757-58, 760.

As for section 7(C), which was only enforceable by the Oklahoma
Human Rights Commission, this Court held that because the attorney
general had no duty to enforce that section, the plaintiffs' claims against him
challenging that section did not qualify for the *Ex parte Young* exception. *Id.*
at 760. FSC relies on the fact that this Court also held that plaintiffs had
standing to bring this claim against the attorney general. Aplt. Br. at 25. But
this Court only analyzed whether the plaintiffs had suffered an injury-in-fact
and did not mention causation or redressability. *Edmondson*, 594 F.3d at
758-59. Because this Court did not analyze redressability, *Edmondson* is no
help to FSC. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33,

42

38 (1952) ("[T]his Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio."); *United States v. Huizar*, 688 F.3d 1193, 1197 (10th Cir. 2012) ("An issue not raised in briefs or arguments nor discussed in the opinion of the court remains open and a decision resolving other issues merely in the same neighborhood cannot be taken as a binding precedent on the point." (cleaned up)). Rather, like in *Nova Health*, because the Attorney General plays no role in enforcing the Act, an injunction against him would do nothing to redress FSC's alleged injuries.[10]

*Declaratory Judgment*:  FSC says that a judgment declaring that the Act is "null and void would provide the mere modicum of relief required." Aplt. Br. at 26. But as the Supreme Court said in *Whole Woman's Health* and as this Court made clear in *Nova Health*, federal courts cannot "enjoin challenged laws themselves" and the possibility that another litigant who has a cause of action under the challenged law might be less likely to bring a suit

---

[10] FSC also cites *Petrella*, arguing that it need not identify any specific action of the Attorney General to prove causation and that redressability is satisfied because there is a possibility for relief under a variety of scenarios. Aplt. Br. at 26. The problem with this argument is that in *Petrella*, the Court held that the attorney general did have the authority to enforce the challenged statute. *Petrella*, 697 F.3d at 1293-94. It thus followed that there was causation and redressability. *See id.* There is no similar possibility for relief in this case.

in state court after the law has been declared unconstitutional will not satisfy the redressability requirement. *Whole Woman's Health*, 595 U.S. at 44 (internal quotation marks omitted); *Nova Health*, 416 F.3d at 1159.

   *Consumer Data Industry Association v. King*, 678 F.3d 898 (10th Cir. 2012), doesn't support FSC's argument either. In *King*, a plaintiff trade organization challenged a law that governed how credit reporting agencies had to respond to requests to remove information resulting from identity theft. 678 F.3d at 901. Unlike the Act, the statute at issue in *King* allowed *both* the state attorney general and the affected consumer to bring a civil action against a credit reporting agency that violated the law. *Id.* Because the attorney general could enforce the law, this Court distinguished *Nova Health* and held that enjoining the attorney general from doing so satisfied the redressability requirement because it "would relieve their problem to some extent, which is all the law requires." *Id.* at 903 (internal quotation marks omitted). This ruling, however, was because unlike in *Nova Health* and this case, "the Attorney General *d[id]* have special enforcement authority and *c[ould]* be distinguished from the garden-variety private litigant." *Id.* at 904. Because the plaintiffs would be avoiding suit from "the state's most powerful litigant" and "the only one authorized to sue on behalf of [the State]," enjoining him from enforcing the law satisfied the redressability requirement. *Id.; see also id.* at 905 ("[F]ederal courts have consistently found

44

a case or controversy in suits between state officials charged with enforcing a law and private parties potentially subject to enforcement."). That's not the case with the Act, which gives the Attorney General *no* enforcement authority.

FSC also relies on footnote 3 of the *King* decision, which suggests that "[a] favorable decision [(a declaratory judgment against the attorney general)] could also benefit [the plaintiff] in . . . suits brought by consumers." *Id.* at 906 n.3; Aplt. Br. at 26. This statement is dicta. The Court's ruling was that a declaratory judgment that the law was preempted would redress the threat of enforcement against the plaintiffs *by the attorney general. Id.* at 906. As this Court explained, "[t]o satisfy the 'case or controversy' requirement, a request for declaratory relief must settle some dispute which affects the behavior of the defendant toward the plaintiff." *Id.* (cleaned up). This Court's aside in footnote 3 that a declaratory judgment might benefit plaintiffs in cases brought by consumers does not touch on this requirement. And relying on it to find redressability would directly conflict with *Whole Woman's Health* and *Nova Health*.

Next, trying to avoid *Whole Woman's Health's* ruling and the district court's reliance on it, FSC contends that the district court misconstrued the relief it is seeking and argues that it is not trying to bind private parties who might bring suits. Aplt. Br. at 32. Instead, it says that its redressability

45

argument is that "insofar as the resulting declaratory and injunctive relief either encourages Utah to legislate with a defter hand or discourages private parties from filing suit in the wake of persuasive authority from this Court, Plaintiffs will have accomplished their constitutionally legitimate goal." Aplt. Br. at 32 (quoting Appx. 216). Even if the district court misunderstood FSC's position, this argument directly conflicts with *Nova Health*'s requirement that it must be "the effect of the court's judgment *on the defendant* that redresses the plaintiff's injury" and its pronouncement that discouraging future suits brought by non-parties will not satisfy the redressability requirement. 416 F.3d at 1159 (emphasis added). Neither the Utah Legislature nor private parties who might bring suit are parties to this case. Relief against the Commissioner or the Attorney General will have no effect on them.

FSC also relies on environmental cases brought under the Administrative Procedures Act to contend that "a decision likely to induce or inhibit third party action is sufficient for redressability." Aplt. Br. at 26-27. But none of those cases involve a request for a declaratory judgment against a state official based on a constitutional challenge to a statute. Rather they are all environmental cases involving federal agency leasing and rulemaking decisions that are necessary to allow an industry actor to proceed with some action. *See WildEarth Guardians v. BLM*, 870 F.3d 1222, 1226 (10th Cir.

2017) (challenging leasing decision); *US Magnesium, LLC v. EPA*, 690 F.3d 1157, 1159 (10th Cir. 2012) (review of agency rule); *S. Utah Wilderness All. v. OSMRE*, 620 F.3d 1227, 1230 (10th Cir. 2010) (challenging leasing decision and decision not to require updated mining plan). In such cases, the causation and redressability requirements are "relaxed." *WildEarth Guardians*, 870 F.3d at 1231. These environmental cases are nothing like this one and don't have anything to do with whether a declaratory judgment against a public official with no authority to enforce a statute will redress plaintiffs' injuries and do not contradict *Nova Health*.[11]

Finally, FSC contends that this case is distinguishable from *Whole Woman's Health* because, for one plaintiff, "there *is* no other hypothetical time, place, suit, or forum in which to assert his rights." Aplt. Br. at 34. But *Whole Woman's Health* confirmed that "those seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments" and that there is no

---

[11] FSC also notes that the district court ignored its citation to *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59 (1978), *Utah v. Evans*, 536 U.S. 452 (2002), and *Department of Commerce v. New York*, 139 S.Ct. 2551 (2019), which it says "conferred standing based on the anticipated reactions of *nonparties* to a judgment." Aplt. Br. at 32-33. But like the Tenth Circuit environmental cases, none of these cases involve a challenge to a statute against an official who has no connection to the enforcement of that statute. Furthermore, this Court has already distinguished *Evans* in this scenario. *See Nova Health*, 416 F.3d at 1159 n.9.

"unqualified right to pre-enforcement review of constitutional claims in federal court." 595 U.S. at 49. The Court cannot ignore its jurisdictional constraints just because there may be no other presently available method for a plaintiff to challenge the statute. *See id; Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 489 (1982) (that a certain plaintiff lacks standing or that no other plaintiff might have standing "is not a reason to find standing").

## Conclusion

For the reasons expressed herein, this Court should affirm the district court's order dismissing this case because it violates Eleventh Amendment immunity and because FSC lacks standing to sue the Commissioner and the Attorney General.

Dated: November 29, 2023

Respectfully submitted,

s/ Sarah Goldberg
Sarah Goldberg
Assistant Solicitor General
160 East 300 South, Fifth Floor
P.O. Box 140858
Salt Lake City, Utah 84114
(801) 366-0533
sgoldberg@agutah.gov

*Counsel for Appellees*

**Certificate of Compliance with Rule 32(a)**

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because:

  [x]      this brief contains 11,329 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(b).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 10th Cir. R. 32(a) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

  [x]      this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 13-point Century Schoolbook font.

Dated: November 29, 2023

                                        s/ Sarah Goldberg

                                        Sarah Goldberg
                                        160 East 300 South, Fifth Floor
                                        P.O. Box 140858
                                        Salt Lake City, Utah 84114
                                        (801) 366-0533
                                        sgoldberg@agutah.gov